UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

PETER MORGAN ATTWOOD,

    *Plaintiff*,

v.   Case No. 1:18cv38-MW/GRJ

CHARLES W. "CHUCK" CLEMONS, SR.,
in his official capacity as Florida
state representative

    *Defendant.*
_____/

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

This Court has considered, without hearing, Defendant State Representative Charles "Chuck" Clemons's motion to dismiss Plaintiff Peter Morgan Attwood's claims. ECF No. 14. The motion is **DENIED**.

Representative Clemons offers four arguments in his motion to dismiss. First, Clemons asserts that the Eleventh Amendment immunizes him against Attwood's claims. Second, Clemons argues that absolute legislative immunity prevents Attwood's claims from advancing. Third, Clemons argues that Attwood has failed to show that Clemons was acting under color of law, an integral requirement for any § 1983 claim to succeed. Fourth, Clemons argues that if this Court dismisses Attwood's First Amendment claim, then it may

1

dismiss Attwood's supplemental state law claims. This Court addresses each in turn.

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible when the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This Court must construe the facts in the light most favorable to Attwood. *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 485 (11th Cir. 2015).

# I

Representative Clemons argues that the Eleventh Amendment immunizes him from Attwood's suit. "[T]he principle of sovereign immunity is a constitutional limitation on the federal judicial power established in Art. III." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984). *Ex parte Young*, however, long ago permitted parties to sue state officials for prospective injunctive relief for alleged continuing violations of federal law. 209 U.S. 123 (1908).

According to Clemons, a state official must be enforcing *some* allegedly unconstitutional law, rule, or policy for the *Ex parte Young* exception to sovereign immunity to apply. ECF No. 14, at 5–6. Here, Clemons argues that because he was not implementing any law, rule, or policy—such as a House

policy or rule—the Eleventh Amendment immunizes him. *See, e.g.*, ECF No. 18 (attaching relevant portions of the Administrative Policy Manual of the Florida House of Representatives).

For support, Clemons turns to *Summit Medical Associates, P.C. v. Pryor*, 180 F.3d 1236 (11th Cir. 1999). There, the Eleventh Circuit found that none of the sued state officials had "any relationship to the enforcement" of an Alabama law granting *only* a husband or maternal grandparent to enforce the civil provision of a partial-birth abortion statute. *Id.* at 1342. Consequently, the *Ex parte Young* doctrine did not apply and the Eleventh Amendment immunized the sued state officials. From that, Clemons argues that Attwood must have alleged that Clemons was implementing some unconstitutional law or policy for *Ex parte Young* to apply. ECF No. 14, at 6.

The *Ex parte Young* exception to sovereign immunity is not so narrow, however. In relevant part, *Summit Medical* only distinguishes between a state official who "has no authority to enforce the challenge statute" and a state official who has some connection with implementing a law. *Summit Med. Assocs.*, 180 F.3d at 1342. A state official's authority to enforce a challenged statute is not the only prerequisite to trigger the *Ex parte Young* doctrine. For state officials to be held accountable in their official capacity, "the official be responsible for the challenged action." *Luckey v. Harris*, 860 F.2d 1012, 1015 (11th Cir. 1988). In *Luckey*, for example, the Eleventh Circuit found that the

3

governor of Georgia was an appropriate defendant because he had enough contacts with an allegedly unlawful law-enforcement action because of his responsibility over law enforcement and his authority over the attorney general to commence prosecutions. *Id.* at 1015–16.

Here, Attwood alleges that Clemons has engaged in viewpoint discrimination in his capacity as a state officer, therefore violating the First Amendment.[1] Viewpoint discrimination is unquestionably a First Amendment violation—an "egregious form of content discrimination." *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). "When the government targets not subject matter, but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant." *Id.*

Clemons controlled his Facebook and Twitter accounts. He was responsible for blocking Attwood. ECF No. 15, Ex. 1, at ¶ 11. Therefore, he was responsible for the challenged action. The alleged violation of the First Amendment is sufficient to "strip[]" Clemons of his official character under the *Ex parte Young* doctrine even if Clemons was not affirmatively enforcing a law, rule, or policy. *Ex parte Young*, 209 U.S. at 160. It would be a peculiar loophole in American law if state officials must be affirmatively advancing a written

---

[1] For the purposes of this motion to dismiss, this Court must accept as true that Clemons was acting as a state officer and thus using his official power in blocking Attwood from viewing and accessing his Facebook and Twitter accounts (though, of course, Clemons disputes this characterization).

4

law, rule, or policy to be stripped of immunity but remain immunized against well-known violations of the U.S. Constitution. Accordingly, Clemons's Eleventh Amendment argument is not persuasive.

## II

Absolute legislative immunity does not bar Attwood's suit against Representative Clemons. Assuming Clemons was operating in his official capacity when he blocked Attwood from Facebook and Twitter—which this Court does on this motion to dismiss—these actions are not within the scope of legislative activity afforded absolute immunity.

"[S]tate and regional legislators are entitled to absolute immunity from liability under § 1983 for their legislative activities." *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998). "Legislative acts are not all-encompassing." *Gravel v. United States*, 408 U.S. 606, 625 (1972). "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Bogan*, 523 U.S. at 54. "The heart of the [U.S. Constitution's Speech or Debate] Clause is speech or debate in either House. Insofar as the Clause is construed to reach other matters, they must be an integral part of the deliberate and communicative processes by which Members participate in

committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation." *Gravel*, 408 U.S. at 625.[2]

Press releases and newsletters are not protected by the Speech or Debate Clause. *Hutchinson v. Proxmire*, 443 U.S. 111, 133 (1979). The Supreme Court has held that a legislator's act to inform the public "is not part of the legislative function or the deliberations that make up the legislative process." *Id*. Similarly, a senator's "private publication" of materials to a non-government entity "was in no way essential to the deliberations of the Senate" and therefore "not part and parcel of the legislative process." *Gravel*, 408 U.S. at 625–26. On the other hand, voting to publish a committee report and preparing a committee report are legislative functions due legislative immunity. *Doe v. McMillan*, 412 U.S. 306, 313 (1973). So too are committee-related acts like issuing a subpoena. *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 507 (1975).

The operation of social-media accounts is most parallel to issuing press releases. There is nothing inherently legislative about operating these accounts. Their primary function is to inform the public—a function the

---

[2] Though *Gravel* addressed legislative immunity for a federal legislator—a senator, to be specific—the protections in the Speech and Debate Clause have been extended to state and local legislators, such as the state representative being sued in this case. *See, e.g.*, *Supreme Court of Virginia v. Consumers Union of the U.S., Inc.*, 446 U.S. 719, 732 (1980) ("We have also recognized that state legislators enjoy common-law immunity from liability for their legislative acts, an immunity that is similar in origin and rationale to that accorded Congressmen under the Speech or Debate Clause.").

6

Supreme Court long ago held is not part of the legislative process and not afforded legislative immunity. *See Hutchinson*, 443 U.S. at 133 ("Valuable and desirable as it may be in broad terms, the transmittal of such information by individual Members in order to inform the public . . . is not a part of the legislative function or the deliberations that make up the legislative process."). Accordingly, Clemons is not protected from Attwood's suit by legislative immunity.

### III

Attwood has pleaded sufficient facts that, when accepted as true, show that Clemons acted under color of law when he blocked Attwood from his Facebook and Twitter accounts.[3] Specifically, Attwood argues that Clemons's otherwise private conduct shared a sufficient nexus with the state to become state action.

"[S]tate action may be found if, though only if, there is such a 'close nexus between the State the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Acad. v. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).

---

[3] On the other hand, Attwood has not pleaded sufficient facts to show a *substantial* likelihood of success on the merits. That is why this Court denied Attwood's motion for a preliminary injunction. ECF No. 29.

7

Taken as true, Attwood has pleaded enough facts to show sufficient nexus with the state. For example, Attwood has shown that Clemons's Facebook account was titled "State Representative Chuck Clemons District 21." ECF No. 4, at ¶ 24; ECF No. 6, Ex. 1, at 3. Such a title is indicative of a state representative's official account—not a politician's private campaign account, as Clemons argues. Moreover, Attwood has provided evidence that on at least one occasion Clemons has used his social media accounts as an outlet for official statements. ECF No. 4, at ¶¶ 29–30; ECF No. 6 at 4–5 & 17.

In short, Attwood's complaint permits this Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S., at 678. Clemons's argument on this basis is not persuasive.

## IV

Because Attwood has pleaded sufficient facts for his First Amendment claim to survive Clemons's motion to dismiss, this Court does not exercise its discretion to dismiss Attwood's state law claims pursuant to 28 U.S.C. § 1367(c).

For the reasons articulated above, Clemons's motion to dismiss is **DENIED**.

**SO ORDERED on May 20, 2018.**

s/Mark E. Walker          
**United States District Judge**
