UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

**PETER MORGAN ATTWOOD**,

    Plaintiff,

v.

**CHARLES W. CLEMONS, SR.**,

    Defendant.

Case No. 1:18-cv-00038-MW/GRJ

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR VOLUNTARY DISMISSAL WITH PREJUDICE**

This is a lawsuit against a Florida state representative and the Florida House of Representatives[1] presenting unsettled, competing claims to First Amendment rights: A private citizen asserts that he has the right to comment on a state representative's social media pages, and the representative asserts that the accounts, created before he took office and maintained without state resources, reflect his own campaign speech protected by the First Amendment.

When it filed this lawsuit, the ACLU announced that the action was not merely about its client's interests but more broadly about "protecting the rights of voters and other constituents . . . who simply want to communicate with their

---

[1] *See Lewis v. Clark*, 137 S. Ct. 1285, 1291 (2017) (recognizing that an official-capacity claim "is against the official's office and thus the sovereign itself").

legislators and hold them accountable."[2] In other words, it is a test case—impact litigation to secure the rights of individuals beyond the parties themselves. On the importance of the issues, the House and Clemons agree.

But just three weeks before a one-day bench trial, the plaintiff and his lawyers informed Clemons that they would move to dismiss the case.[3] Clemons and the House still believe that a judgment on the merits would best serve the public interest, and the burden on a Gainesville plaintiff represented by the ACLU—a one-day bench trial in Gainesville on "comprehensive stipulations"[4] and issues that have already been thoroughly briefed at summary judgment—is slight, at most. Therefore, defendants did not stipulate to dismissal. To be sure, defendants acknowledge the strong presumption that a plaintiff should be permitted to dismiss with prejudice, even after he has forced the defendant to expend significant resources defending the claim. But under the unique circumstances presented here, the Court should not permit the plaintiff to just walk away.

Despite his motion to dismiss his own claims with prejudice, Attwood's lawyer crowed to the press that this case "would be useful for curbing other Florida

---

[2] ACLU of Fla., *Attwood v. Clemons*, https://bit.ly/3ywovu0 (last visited May 24, 2021) (attached as Ex. A).
[3] *See* ECF No. 86.
[4] *See* ECF No. 84.

state officials from doing the same thing Clemons did."[5] He may well be correct, although any "curbing" effect would be attributable not to any success on the merits but instead to incumbent officials' concern that they, like Clemons, will be subjected to costly and time-consuming litigation if they use their social media pages as he did here. First Amendment jurisprudence has a term for this concept: a "chilling effect." And as the Supreme Court has recognized, the risk of costly litigation can drive citizens "simply to abstain from protected speech—harming not only themselves but society as a whole." *Virginia v. Hicks*, 539 U.S. 113, 119 (2003). The potential for a chilling effect is especially pronounced here, because online speech is one of the most effective, affordable ways for candidates to reach potential voters.

Compounding this problem, lawsuits against elected officials can be a tool for inflicting political harm. Indeed, there are strong indications that this case was driven, at least in part, by a desire to harm Clemons's re-election prospects. As discovery showed, Attwood was introduced to his lawyer by Gainesville city commissioner Adrian Hayes-Santos, a political detractor of Clemons. Attwood Dep. 50:13-51:8, 52:14-17 (excerpts attached as Ex. C); Ex. D. The day Attwood

---

[5] Josh Henderson, *After Three Years, Twitter Lawsuit Against Clemons Dropped*, Gainesville Sun (May 17, 2021 at 1:05 p.m.) (text attached as Ex. B).

3

filed his lawsuit, Hayes-Santos connected Attwood with a *Gainesville Sun* reporter, whose story Hayes-Santos shared on social media. *Id.* at 52:17-18; Ex. E.

Shortly after this case returned to the district court in July 2020, as Clemons was ramping up his re-election campaign during the summer, Attwood privately expressed a desire to "humiliate" Clemons "before this election." Ex. F, at 3. And following Clemons's September 22 deposition, his counsel, Eric Lindstrom, leaked information from the deposition to a friend and frequent Clemons critic, Jeremiah Tattersall, in violation of court-ordered confidentiality obligations that Attwood and his counsel had agreed to just days before the deposition.[6] On October 3, a Facebook user named Katy Burnett, who managed the campaign of Clemons's opponent in the 2018 general election, posted about Clemons's "cross examination with the lawyers"—a clear reference to his deposition. Ex. H, at 2 (reproducing the posts). Minutes later, Tattersall posted a comment disclosing additional information from Clemons' deposition. *Id.*

---

[6] Under the order, all depositions were to be treated as confidential until 20 days after receipt of the transcript and not "used or disclosed outside this litigation for any purpose" during that time. ECF No. 61, at ¶¶ 2, 8. The disclosures described above occurred before the transcript was even finalized. Confronted with the violation, Lindstrom admitted leaking the information to his friend, Tattersall, though he sought to shift the blame to Clemons's counsel for not making confidentiality designations on the record, which the Court's order did not require. Ex. G, at 2; *see* Ex. H (Oct. 6, 2020 letter to Lindstrom identifying the violation and discussing concerns that case was being used for political purposes).

The violation's October 3 timing was significant. Although Election Day was a month away, supervisors of elections had already begun to distributing vote-by-mail ballots in an election widely expected to feature a greater number of mail-in votes because of the COVID-19 pandemic. *See* Fla. Stat. § 101.62(4) (requiring non-military voters' vote-by-mail ballots to be sent no later than 33 days before Election Day). Under the Court's order, Attwood and counsel were required to, but did not, wait until at least 20 days after receiving the yet-to-be-completed deposition transcript to disclose its contents, well after many voters already would have cast their ballots. *See supra* n. 7, Ex. I (reflecting receipt of the transcript on October 5, 2020). Thus, not only does it appear that discovery from this case was used in an (unsuccessful) attempt to influence the election, but it was done in violation of this Court's order.

After Clemons was re-elected in November 2020, Attwood and his counsel apparently began to lose interest in pursuing the case. The day before summary judgment briefing closed, Lindstrom reached out offering to settle if Clemons would agree to minor restrictions on his accounts. Ex. J, at 2. Although the action ostensibly originated as a test case, Attwood and his counsel were "not wanting to spend any more time on the case." *Id.* at 1. Attwood even floated a non-disparagement provision, claiming no longer to be "looking to embarrass

Clemons." *Id.* Clemons declined, explaining that he wanted a "ruling on the merits" on the fully briefed summary-judgment motions. *Id.*

Less than two hours later, Lindstrom responded with a public records request for information about the cost of defending the lawsuit that he had brought. *Compare* Ex. J at 1 *with* Ex. K. With the desire to embarrass Clemons apparently rekindled, these records made their way to Lindstrom's friend, Tattersall, who posted them on Twitter, tagging various media outlets' Twitter accounts and criticizing Clemons for "carry[ing] on this silly fight." Ex. L. More recently, Attwood himself would claim on Twitter that the cost of defending the lawsuit that Attwood chose to file showed that Clemons was not "fiscally responsible." Ex. M.

To be clear, Attwood and Lindstrom have the First Amendment right to criticize Clemons. That is not the point. The point is that they have used this case as a vehicle to attack Clemons politically, not to vindicate the constitutional claim that they have now abandoned. Just days after telling the Court that an extension was necessary to negotiate "comprehensive stipulations" to "narrow the disputed issues and reduce the number of witnesses and volume of testimony" for the one-day bench trial, ECF No. 84, Attwood sought to dismiss the case. None of his explanations makes sense.

First, the motion claims that Attwood "prevailed," but he acknowledges that the dismissal with prejudice that he seeks is the same as "if the case had been

6

adjudicated in [Clemons's] favor after a trial," leaving Clemons free to manage his social media accounts as he wishes. ECF No. 87, at 3 (quoting *Quillet v. Jain*, 2014 WL 1239207, at 1 (M.D. Fla. May 27, 2014). Any notion Clemons has agreed to any limitation on how he uses his accounts is simply false. Clemons has not "represent[ed] to the Court that he will not operate the accounts if he is in office after his last campaign." *See* ECF No. 87. The cited text states only that Clemons "did not testify that he plans to use the accounts" "while he is in office after his last campaign," as Attwood had claimed in his motion for summary judgment. ECF No. 72, at 18. Other than sending a misleading PR message, it is unclear what this falsehood was designed to achieve.

Next, despite being "represented by *pro bono* counsel," Attwood chastises Clemons for "draining [his] resources." *Id.* at 1, 5. And even though a bench trial would have occurred on June 7 and Clemons has never requested that any deadline be extended, Attwood faults Clemons for "delaying this proceeding for more than three years with no end in sight." *Id.* at 1, 5. As for the prospect of an appeal, that would have been anticipated from the outset.

If the Court determines that dismissal with prejudice is appropriate at this late stage, it should also determine that Clemons is the prevailing party and award him costs. *See* Fed. R. Civ. P. 54(d)(1) (providing that "costs—other than attorney's fees—should be allowed to the prevailing party"). Under Eleventh

Circuit precedent, a voluntary dismissal with prejudice under Rule 41(a)(2) renders the defendant the prevailing party under Rule 54(d)(1). *Mathews v. Crosby*, 480 F.3d 1265, 1276 (11th Cir. 2007) ("The Defendants, having obtained from Mathews a voluntary dismissal with prejudice, are considered prevailing parties."); *Manhattan Const. Co. v. Phillips*, 2012 WL 13001901, at *5 & n.6 (N.D. Ga. Dec. 11, 2012); *Gil v. Palm Beach Cty.*, 2020 WL 434484, at *1 (S.D. Fla. Jan. 28, 2020); *see also Mother & Father v. Cassidy*, 338 F.3d 704, 709 (7th Cir. 2003) ("[V]oluntary dismissal with prejudice renders the opposing party a 'prevailing party' [under] Rule 54."). While taxing costs is technically discretionary, there is a "strong presumption" in favor of doing so. *Mathews*, 480 F.3d at 1276.[7]

    The Court should also grant any other relief it sees fit as a term of dismissal under Rule 41(a)(2). *See* Fed. R. Civ. P. 41(a)(2) (permitting dismissal on "terms that the court considers proper"). Attwood acknowledges in his motion to dismiss that, under extraordinary circumstances, those conditions may include an award of attorney's fees. *See* ECF No. 87, at 2. This may well be an appropriate case for such relief. *First*, a fee award, even a modest one, would mitigate the chilling effect of Attwood's dismissal at this late hour. And that would be particularly appropriate because, since filing his motion to dismiss, Lindstrom has publicized the lawsuit as "curbing" the "same behavior," thereby enhancing the chilling

---

[7] Defendants will prove costs pursuant to Local Rule 54.2.

effect. *Second*, as discussed above, there is evidence that the suit was brought and maintained to inflict political harm, not simply to obtain relief for the plaintiff or to resolve important issues for the benefit of the public. This evidence includes Lindstrom's decision to violate the Court's confidentiality order by providing information to a friend to use against Clemons as voters were casting their ballots last year. That the dismissal motion's explanations for the dismissal make little sense, particularly the claim that Attwood somehow "prevailed," only enhances the likelihood that ulterior motives fueled this case.

For the reasons stated above, Clemons acknowledges that there is little he can do to prevent dismissal if Attwood now wishes to avoid judicial resolution of the important constitutional issues that this case presents. But the Court should make clear that Clemons—not Attwood, as his motion suggests—is the prevailing party here and tax costs against Attwood. The Court may also consider imposing a modest fee award or any other terms that the Court considers proper.

|  |  |
|---|---|
|  | Respectfully submitted: |
|  | /s/ Jonathan L. Williams |
| Daniel W. Bell | Jonathan L. Williams |
| General Counsel | Fla. Bar No. 117574 |
| Fla. Bar No. 1008587 | Jonathan L. Williams, P.A. |
| The Florida House of Representatives | 113 South Monroe Street, First Floor |
| 420 The Capitol | Tallahassee, FL 32301 |
| 402 S. Monroe St. | (850) 706-0940 |
| Tallahassee, FL 32399 | jw@jonathanwilliamslaw.com |
| (850) 717-5500 |  |
| daniel.bell@myfloridahouse.gov |  |

*Counsel for Charles W. Clemons, Sr.*